UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE PROCTOR & GAMBLE COMPANY, and SUBSIDIARIES,

    Plaintiff,

vs.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 1:08-cv-608

Weber, J.
Black, M.J.

**ORDER RE: MOTION TO COMPEL (Doc. 46)**

This civil action is before the Court on Plaintiff Procter & Gamble Company's motion to compel production of documents withheld on claims of the deliberative process privilege (Doc. 46), the Defendant United States of America's memorandum *contra* (Doc. 48), and the Plaintiff's reply memorandum (Doc. 49). The trial attorneys presented oral argument to the undersigned on November 24, 2009. Subsequent to oral argument, the undersigned performed a comprehensive *in camera* review of the documents over a period of several days.[1] The *in camera* review was strikingly helpful to the undersigned's analysis of the merits of the parties' positions, and, indeed, changed the undersigned's perception of the validity of the Government's assertions.

Statement of the Case.

This tax refund case arises out of the parties' dispute over one billion dollars in tax deductions and credits that Plaintiff claimed in its corporate income tax returns for the 2001 through 2005 tax periods. Among the claimed tax benefits were charitable deductions resulting from Plaintiff's donations of certain intellectual property technologies and 80 artwork paintings donated to the Cincinnati Art Museum and the National Underground Railroad Freedom Center. After Plaintiff filed tax returns for the

---

[1] The Government provided two "small" banker's boxes of documents relating to the documents of the Art Panel. The Government also provided a CD of allegedly privileged documents relating to the IRS's consideration of the donated technologies. The CD contained 463 megabytes of data, which translates into 242,745,344 words (*i.e.*, two hundred forty two million, seven hundred forty five thousand, three hundred forty four words), or about 970,981 double spaced typewritten pages (*i.e.*, about a million pages).

relevant years, the IRS performed examinations (audits) of the returns and ultimately issued a Notice of Deficiency determining that Plaintiff was not entitled to the tax deductions or credits at issue in this case. Plaintiff paid the disputed taxes and subsequently filed this civil action seeking a refund.

### The Present Discovery Dispute.

During discovery, P&G requested that the Government produce documents underlying the IRS's appraisals of the donated artwork and technologies. In response, the Government withheld many documents relating to these appraisals on the basis of the "deliberative process privilege." Consequently, P&G moved to compel the production of the documents, arguing that the deliberative process privilege does not apply because the documents sought are factual and investigative in nature and because the Government has failed to comply with procedural requirements for claiming the privilege.

### An Overview of the Deliberative Process Privilege.

The deliberative process privilege was created in order to protect communications made in the course of formulating agency decisions on legal and policy matters.[2] The purpose of the privilege is to promote frank discussion of issues relating to the adoption of policies for and the making of specific adjudicative decisions within a government agency.[3]

For a particular document to be privileged, it must be both pre-decisional and deliberative.[4] To be pre-decisional, a document must have been created prior to the time that the final agency decision was issued.[5] In order to be deliberative, the document must reflect "the give-and-take of the consultative process."[6]

---

[2] *Trevino v. Jones*, No 1:08-cv-339, slip op. (S.D. Ohio May 26, 2009) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138 (1975)).

[3] *Dawson v. Sullivan*, 136 F.R.D. 621, 624 (S.D. Ohio 1991).

[4] *NLRB*, 421 U.S. at 150-51.

[5] *Schell v. United States H.H.S.*, 843 F. 2d 933, 940 (6th Cir. 1988)

[6] *Trevino* at 10 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1988); *see also Schell*, 843 F.2d at 939).

The privilege extends only to nonfactual nonpublic communications within federal agencies.[7] That is, the privilege does not protect factual or investigative materials, and a document does not qualify for the privilege merely because it is part of an ongoing government process.[8] Moreover, the deliberative process privilege does not protect documents in their entirety, and if the government can segregate and disclose non-privileged factual information within a document, it must do so.[9]

Ultimately, in each case, the determinative question is whether production of the contested document would be injurious to the consultative functions of government that the privilege of non-disclosure protects.[10]

As one court has articulated: "[t]he privilege's purposes are to assure that subordinates within an agency will feel free to provide the decision-maker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies [or decisions] before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action."[11]

Once an agency makes its decision, the agency is obligated to state both the decision and the reasons that support it.[12] However, in most cases, an agency is required to weigh various options prior to reaching its final decision and may do so by questioning the wisdom of various options or by questioning the accuracy of the process that has preceded the point of decision.[13] If all interagency communications about such matters

---

[7] *Trevino* at 6 (quoting *United States v. Irvin*, 124 F.R.D. 169, 172 (C.D. Cal. 1989)).

[8] *Alpha I, L.P. v. United States*, 83 Fed. Cl. 279, 288 (2008); *see also Coastal States Gas Corp.*, 617 F.2d at 868.

[9] *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008); *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1149-50 (9th Cir. 2008).

[10] *Trevino* at 10 (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)).

[11] *Schell*, 843 F.2d at 939 (quoting *Costal States*, 617 F.2d at 866).

[12] *Dawson v. Sullivan*, 136 F.R.D. 621, 624 (S.D. Ohio 1991).

[13] *Id.*

were made public, agency staff members might be deterred from expressing honest opinions about matters which factor into the agency's final decision.[14] Consequently the deliberative process privilege was created in order to protect communications made in the course of formulating agency decisions on legal and policy matters.[15]

The privilege that attaches to pre-decisional and deliberative intra-governmental memoranda clearly has finite limits, even in civil litigation. In each case, the ultimate question is whether production of the contested document would be injurious to the consultative functions of government that the privilege of non-disclosure protects.[16]

<u>Are the Documents Being Sought "Relevant"?</u>

The Government seeks to avoid disclosure of the requested documents for several reasons. As a threshold matter, the Government asserts that the documents sought are not "relevant" to the dispute and therefore are not discoverable. P&G's first response to this argument was merely to assert that the argument was "absurd." After the Government briefed its lack-of-relevancy argument, P&G responded more fully by asserting that the documents sought relate directly to the value of the artwork and technologies, that any evidence tending to show that the IRS's value undervalues the paintings and technology goes to the central issue in the case, and that while the present litigation is a *de novo* proceeding, that means only that the IRS's findings are not entitled to any special deference, not that otherwise relevant evidence developed during the audit becomes exempt from discovery.

As to relevancy, pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties are entitled to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense ...." That is, a party is allowed to obtain discovery of any matter that "bears on or that reasonably could lead to other matters that could bear on any issue that is or may be in the case."[17] Indeed, "[a] request for discovery ... should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action."[18]

---

[14] *Trevino*, at 9 (citing *Dawson v. Sullivan*, 136 F.R.D. 621 (S.D. Ohio 1991)).

[15] *Trevino*, at 9 (citing *NLRB*, 421 U.S. at 138).

[16] *Trevino*, at 9 (citing *Kaiser Aluminum & Chem. Corp. v. United States*, 157 F. Supp. 939, 946 (Fed. Cl. 1958); *Mink*, 410 U.S. at 87).

[17] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).

[18] *Boudreau v. Bouchard*, No. 07-10529, 2008 U.S. Dist. LEXIS 66871, at *10 (E.D. Mich. Sept. 2, 2008) (quoting *Snowden v. Connaught Lab.*, 137 F.R.D. 336, 341 (D. Kan. 1991)).

The documents sought here are relevant. The documents relate directly to the value of the artwork and technologies donated by P&G, and any evidence tending to show (or not to show) that the IRS's value undervalues the donations goes directly to the central issue in the case. While it is true that the IRS's determination regarding the underlying tax liability is not determinative, if documents reflect only the work product of the factual investigation made by the IRS, such documents are clearly discoverable.

### The Government's Burden to Substantiate the Claim of Privilege.

As to the applicability of the deliberative process privilege, frankly, it appeared to the undersigned in the first instance that the Government was claiming protection of virtually every document the IRS created during its audit. (*See* the Government's Brief at p. 12: "The documents withheld by the United States in this litigation were created during an ongoing investigative process within the Internal Revenue Service; as such, they are both pre-decisional and deliberative."). Such a broad brush would equate to the assertion that the IRS is exempt from discovery in tax cases, which is certainly not the law. As one court has remarked: "Characterizing the documents as "predecisional simply because they play into an ongoing audit process would be a serious warping of the meaning of the word."[19]

Further, the Government's itemization of the documents into six broadly described "categories" does not provide a clear, individualized basis for finding that the documents are privileged. The six generally described categories provided do not provide especially specific circumstances of the documents, including why the document was created, who the author and recipients were (*i.e.*, whether they are the communications of subordinates to superiors recommending potential outcomes), and whether or not the documents were shared and circulated within the IRS (as part of a consultative process). This sort of information is vital if the Court is to be able to determine whether the document is pre-decisional and deliberative. That is why the Sixth Circuit has held repeatedly that "we require specificity and detail in support of [a deliberative process] claim."[20] The Government is not permitted simply to dump thousands of pages of documents on the Court and leave it for the Court to sort it out. Thus, the Sixth Circuit points out that "we caution that such [*in camera*] review is rare, and should not be a substitute for a specific and detailed ... setting forth [of] the reasons supporting nondisclosure."[21]

---

[19] *Coastal States*, 617 F.2d at 868.

[20] *Schell*, 843 F.2d at 940 n. 5 (quoting *Parke, Davis & Co. v Califano*, 623 F.2d 1, 6 (6th Cir. 1980)).

[21] *Schell*, 843 F.2d at 940.

### The Court's *In Camera* Review.

Notwithstanding the Government's failure to provide the Court with an extensive detailing of the circumstances of each document sought to be protected from disclosure, the undersigned has exercised his discretion nevertheless and undertaken a comprehensive *in camera* review of the documents in order to be able to assess accurately the merit of the Government's assertion that the documents are "deliberative" and not simply "factual." The undersigned has undertaken this significant work because the key question is whether or not the production of the contested documents would be injurious to the consultative functions of government.

### Production of the Art Panel's Documents.

The Court's decision as to the production of the Art Panel's documents is simplified because there is a United States Tax Court decision directly on point. In *Bernardo v. Commissioner*, 104 T.C. 677, 693-94 (1995), the U.S. Tax Court expressly rejected the Government's argument that documents created by the IRS Art Advisory Panel are protected by the deliberative process privilege. In reaching this express conclusion, the Tax Court found that the Art Panel's meetings were closed to the public "in order to protect the confidentiality of the information provided to the Panel by taxpayers and <u>not to insure the candor of intragovernmental communications</u>." *Id.* at 694 (emphasis supplied).

Faced with this express holding of the most specialized tax court in the country, the Government laments that "it appears that the deliberative process privilege was not properly asserted there [in *Bernardo*], since the IRS failed to introduce evidence that the disclosure of the meeting notes would work harm on the agency." In seeking to make this argument in the present case, the Government presents an affidavit which provides that "Panel members have told me that the secrecy of these deliberations is a key to their participation on the Panel." (Doc. 48-1 at p. 3, ¶6.) But one would wonder why Panel members assume the proceedings are secret when the Tax Court ruled 14 years ago that the proceedings are not "secret." Moreover, the lament that Panel members would not serve on the Panel if the meetings were "recorded or made public" or if their comments would be "subject to release to the general public" is <u>not</u> implicated here, because the undersigned is not ordering public release of their comments but merely release to the party opposing the IRS in this litigation. Indeed, production of the Art Panel's documents shall be governed by a protective order limiting release to the participants in this lawsuit only.

Accordingly, the undersigned concludes that production of the documents of the Art Panel shall be compelled here, as they were in *Bernardo*.

### The IRS's Documents Regarding the Donated Technologies.

Generally speaking, the deliberative process privilege applies to the examinations of tax returns,[22] including the notes of audit agents.[23] Thus, compelled production of the IRS's audit documents is only appropriate if the documents "do not involve the opinions, reasonings, or conclusions of any government agents but rather reflect the work product of the factual investigation made."[24] Again, the ultimate determinative question is whether production of the contested documents would be injurious to the consultative functions of government that the privilege of non-disclosure protects.[25]

### Pre-decisional.

Although "pre-decisional" is simplistically defined as occurring before the agency's decision, the analysis actually requires a study of three factors: (1) whether the document pre-dates the agency's decision; (2) whether the document is from a subordinate to a superior; and (3) whether the document is recommendatory in nature.[26] The thrust of the analysis is, again, whether production of the contested document would be injurious to the consultative functions of government.[27]

Here, most of the documents withheld by the Government are "notes" or "activity logs" which, one might assume, would not reflect transmittals within the IRS for consultative purposes, nor reflect recommendatory findings. One might assume that they are simply documents prepared as part of the IRS's audit, largely to memorialize the facts that were observed and the activities undertaken, not recommendations as to potential findings or consultations among team members, *i.e.*, subordinates reporting to superiors. Thus, one would be inclined to observe summarily that the mere fact that documents were prepared in the course of an IRS audit does not *ipsit dixit* transform them into "secret" ones.

---

[22] *ISI Corp. v. United States*, 503 F.2d 558, 559 (9th Cir. 1974).

[23] *Ernest & Mary Hayward Wier Found. v. United States*, 508 F.2d 894, 895 n.2 (2d Cir. 1974).

[24] *Simons-Eastern Co. v. United States*, 55 F.R.D. 88, 90 (N.D. Ga. 1972).

[25] *Trevino* at 9 (citing *Kaiser Aluminum & Chem. Corp.*, 157 F. Supp. at 946; *Mink*, 410 U.S. at 87).

[26] *Schell*, 843 F.2d at 942 (citing *Coastal States*, 617 F. 2d at 868).

[27] *Dawson*, 136 F.R.D. at 625.

### "Category 1" Documents

The Government describes "Category 1" of the withheld documents to include:

"Typewritten notes prepared by a member of the IRS examination team after a meeting with the taxpayer's representatives or a third party, at which counsel for the taxpayer was present. These notes reflect the information discussed at those meetings, as well as its potential impact on the issues under review and plans for future action. These notes also reflect the thought processes of individual IRS examination team members preparing them. To the extent that factual material is contained in these documents, is so intertwined as to make redaction impossible."

Interestingly, however, the Government acknowledges that "handwritten notes prepared contemporaneously with these meetings have been produced to Plaintiff, as those notes contain largely factual information and do not involve the deliberation and analysis generally found in the typewritten notes."

If the typewritten notes were prepared from the handwritten notes, one would presume that the subject matter of the handwritten notes is also reflected in the typewritten notes. Why the non-factual portions of the typewritten notes, not reflected in the handwritten notes, cannot be retracted from the typewritten notes is curious. The inference to be drawn is that an insufficient effort has been made to redact the deliberative portions of the typewritten notes. And the Court's *in camera* review substantiates the inference. Moreover, "Category 1" includes more than "typewritten notes ... after a meeting with the taxpayer" and the Government has not offered adequate explanations of what the "other" documents are and why they are deliberative - as is the Government's burden.

Accordingly, the undersigned finds that the Government has not met its burden to evidence that the entireties of the typewritten notes (and all documents in "Category 1") are protected by the deliberative privilege, and, accordingly, the Government shall produce forthwith the non-privileged portions of the typewritten notes (by redacting or withholding only the non-factual deliberative portions) and the non-privileged portions of the documents which are not "typewritten notes of meetings with the taxpayer" (by redacting or withholding only the non-factual deliberative portions).

### "Category 2" Documents

The Government describes "Category 2" of the withheld documents to include:

> "Documents concerning the decision as to whether to hire outside consultants and/or appraisers, as well as agreements with such outside firms."

As a threshold matter, the Government does not explain how a contract with an outside consultant could be considered protected under the deliberative process privilege. The privilege protects deliberations, not contracts.

Moreover, the Government fails to articulate why documents exchanged between the IRS and its outside, non-governmental consultants would be protected by the intra-governmental deliberative process privilege. While documents prepared by government consultants *could* be covered by the privilege, the privilege does not apply where the consultant is merely reflecting facts. Here, the Government's broad-brush approach that all documents relating to its consultants are privileged overreaches, and, in the final analysis, the Government fails to meet its burden to evidence the privileged nature of the documents, either in its generic "Category 2" description or in the brief descriptions in its privilege log.

Moreover, the Court's *in camera* review did not afford the undersigned the ability to draw any meaningful conclusions in this regard. Accordingly, the Government has failed to meet its burden to evidence the privileged nature of the documents withheld, and the Government cannot simply dump that responsibility on the Court. Therefore, the Government shall produce forthwith all "Category 2" documents, but for those portions which are privileged under 26 U.S.C. § 6103.

### "Category 3" Documents

The Government describes "Category 3" of the withheld documents to include:

> "Handwritten notes taken during, or typewritten notes discussing or memorializing, meetings of the examination team regarding substantive tax matters. These documents reflect the private deliberations of the examination team ...."

The Court's *in camera* review of these "Category 3" documents substantiates the Government's assertions. The notes appear to summarize preliminary analyses, reflect plans for subsequent action by the team, and/or memorialize deliberations and communications up and down the chain of command. These documents are therefore deliberative, and they are reflective of the consultative function of the Government. Accordingly, the Government need not produce these documents.

### "Category 4" Documents

The Government describes "Category 4" of the withheld documents to include:

"Draft questions for interviewees, either plaintiff's employees or third parties. These are questions proposed by an examination team member ... counsel for Procter & Gamble ... was present at each of these interviews, and heard the actual questions posed."

Accordingly, the nub of this category of documents is that questions proposed for interviews, but not actually used, might disclose IRS strategy and deliberations about potential subject matters of inquiry and strategic decisions in what to pursue and not to pursue. On balance, the undersigned concludes that if an IRS team member were to know that every potential question s/he suggested would later be subject to disclosure to the tax payer, then a team member might well be motivated to limit the range of the possible interview questions. This chilling effect on a team member's potential work is precisely what the deliberative privilege is designed to forestall. Accordingly, after an *in camera* review, the undersigned finds that the Government need not produce this category of documents as they are part of the consultative function of the team members' work.

### "Category 5" Documents

The Government describes "Category 5" of the withheld documents to include:

"Agent activity logs. ... These logs contain factual information associated with tax specific issues for a tax return, but they also document the discussions and deliberations that occur between various members of the IRS examination team .... The United States has produced these activity logs, but redacted out material which reflects the thought processes and/or deliberations of the IRS examination team."

The Government's representation that it has produced the factual portion of the activity logs but redacted out that material which reflects thought processes and/or deliberations is precisely what the law requires.[28] The undersigned tested the Government's representation by reviewing all of the redacted portions. Upon such review, the undersigned concludes easily that the redacted portions reflect the thought processes of the team members, record consultative efforts among team members, and reveal developing strategies, consideration of competing options, and deliberations. The redacted portions of the Category 5 documents are precisely what the deliberative process privilege is designed to protect, and surely the team members would not have been as

---

[28] This is what the Government should have done as to the "Category 1" documents, too.

forthcoming in their shared deliberations had they known that the notes would be shared with the taxpayer in subsequent litigation. Thus, the redacted portions reflect textbook examples of what the deliberative process privilege is designed to protect, and the Government shall not be ordered to produce them in derogation of their privileged status.

### The Balancing Test.

Even if documents are protected from disclosure by the deliberative privilege, they may still be ordered produced if the taxpayers makes a "sufficient showing of need" for disclosure pursuant to a balancing test articulated by case law.[29] Here, the balancing test does not compel disclosure. Although the documents are relevant, the taxpayer has ample evidence within its own files to make its case, and a tax refund case is not as compelling toward disclosure as a civil rights case. Moreover, although the Government is indeed a party to this case, its need to maintain open and frank communications within the IRS trumps the mere happenstance of its role as a party to this litigation, and undermining the confidentiality of its consultative work is precisely what favors upholding the privilege. On balance, the balancing test does not accrue to the taxpayer's benefit to the degree necessary to establish that the taxpayer's need for the documents outweighs the Government's need for confidentiality.

### The Nature of the Government's Assertion of the Privilege.

To ensure that the privilege is not abused, assertions of the deliberative process privilege must meet certain procedural requirements, including that the privilege be asserted through a formal claim made by the head of the agency which has control over the documents.[30] As one court has explained: "Requiring the agency head to review the documents sought and to claim the privilege where appropriate is the most effective method available to assure consistency and prudence."[31] Conversely, simply permitting any government attorney to assert the privilege undermines its credibility, because "the judgment of attorneys engaged in litigation is very likely to be affected by their interest in the outcome of the case."[32] Thus, many courts have held that under no circumstances is it sufficient for the privilege merely to be claimed by litigation counsel for the

---

[29] *Cobell v. Norton*, 213 F.R.D. 1, 4 (D.D.C. 2003); *Redland Soccer Club, Inc. v. Dep't of the Army of the United States*, 55 F.3d 827, 854 (3d Cir. 1995) (quoting *First E. Corp. v. Mainwaring*, 21 F.3d 468 n.5 (D.C. Cir. 1994)).

[30] *Alpha I, L.P. v. United States*, 83 Fed. Cl. 279, 289 (2008).

[31] *Pierson v. United States,* 428 F. Supp. 384, 395 (D. Del. 1977).

[32] *Pierson*, 428 F. Supp. at 395 (*citing Thill Sec. Corp. v. New York Stock Exch.*, 57 F.R.D. 133, 138 (E.D. Wisc. 1972)).

Government.[33] However, requiring the head of the agency to be the only person able to invoke the privilege appears to the undersigned to be overly draconian, and various courts have permitted delegation of the responsibility to be made to another "high-ranking agency official," *e.g.*, the Assistant Chief Counsel (Disclosure Litigation).[34]

In addition to meeting the requirement that the privilege be invoked by the agency head, or, at the very least, by a high-ranking official within the agency, the party seeking protection must state with particularly what information is subject to the privilege and must supply the court with precise and certain reasons for maintaining the confidentiality of the requested documents.[35] Moreover, ordinarily, the assertion of the deliberative process privilege calls for support by an affidavit from the agency head at the time the privilege is first asserted.[36]

Here, the Government first asserted the deliberative process privilege through its trial counsel and privilege logs. Subsequently, during the pendency of the motion to compel, the Government submitted an additional assertion of the privilege by IRS employee, John Budde, the IRS Senior Attorney who has been advising the audit team. Mr. Budde has personal knowledge of the documents at issue, and he is the person with authority to claim the privilege on behalf of the IRS in this case pursuant to the agency's Litigation Guideline Manual. Thus, the Government argues that Mr. Budde is of a sufficiently high-ranking and *knowledgeable* position to assert the privilege properly, and notes further that "to require that a single senior official at the IRS must personally review voluminous deliberative materials and sign a declaration every time the privilege is asserted in every tax case arising in the United States would impose significant burdens on the agency." (Doc. 48 at 19). Apparently, the United States would prefer simply to impose the burden on this Court.

The United States Court of Appeals for the Sixth Circuit has not specifically required that the deliberative process privilege be asserted by the Agency Head. Nevertheless, the Court of Appeals for the Federal Circuit has held that if the IRS

---

[33] *United States v. O'Neill,* 619 F.2d 222, 225 (3d Cir. 1980); *Scott Paper Co. v. United States,* 943 F. Supp. 489, 497-98 (E.D. Pa. 1996); *Resident Advisory Bd. v. Rizzo,* 97 F.R. D. 749, 752 (E.D. Pa. 1983); *Kaufman v. City of New York,* 1999 WL 239698, at *3.

[34] *Marriott Int'l Resorts, L.P. v. United States,* 437 F.3d 1302, 1306-08 (Fed. Cir. 2006).

[35] *Alpha I,* 83 Fed. Cl. at 289-90.

[36] *Alpha I,* 83 Fed. Cl. at 290; *see also E.E.O.C. v. Texas Hydraulics, Inc.,* 246 F.R.D. 548, 551-52 (E.D. Tenn. 2007).

Commissioner himself does not claim the privilege, then the appropriate person to whom that responsibility should be delegated would be the IRS Assistant Chief Counsel.[37] In fact, this is precisely what the IRS itself argued before the Federal Circuit. Indeed, as the Government itself noted: "the Assistant Chief Counsel was not directly involved in the underlying tax controversy, and therefore is in a position to exercise independent judgment concerning the applicability of the privilege."[38] Having prevailed on this argument before the Federal Circuit, the IRS now takes the position before this Court that there is no need for an independent, high-level official to claim the privilege after all, especially considering the burden on the agency. The undersigned finds this offensive.

The requirement that the agency head or his or her independent, high-level subordinates are the only persons authorized to assert the privilege is not simply an empty formality. It is designed to ensure that the privilege is not lightly invoked and is claimed only when necessary and in a targeted fashion.[39] And it avoids the concern that the judgment of attorneys engaged in the subject litigation may very likely be affected by their interest in the outcome of the case to the degree that the privilege is overstated.[40]

Nevertheless, here, the undersigned has engaged in a comprehensive *in camera* review of the documents and finds in large part that the Government has not overreached. To rule at this late stage of discovery that the Government has waived its right to assert the deliberative process privilege because the IRS Commissioner himself did not assert it appears to the undersigned to reward form over substance. That is, even though the undersigned considered that Mr. Budde's credibility might be suspect given his presence as a member of the litigation team, the *in camera* review has obviated that concern in large part.

However, and even though the undersigned recognizes that his approach (*infra*) appears to put the cart before the horse, the undersigned hereby requires the IRS Commissioner or the Assistant Chief Counsel (Disclosure Litigation) or an appropriately high-ranking <u>non-litigation team member</u> to present an affidavit to the undersigned within 30 days affirming under oath, *inter alia*, that s/he has undertaken a full review of the allegedly privileged documents and affirms that the assertion of the deliberative process privilege is narrowly tailored and proper. Failure to present this affidavit timely, with its contents fully consistent with what the law requires, shall cause the undersigned to vacate the present Order and compel the Government to disclose all withheld documents.

---

[37] *Marriott Int'l*, 437 F.3d. at 1308.

[38] Gov't's *Marriott* Brief, 2005 WL 1397851 at *36.

[39] *United States v. Reynolds*, 345 U.S. 1, 7 (1953).

[40] *See Thill Sec.*, 57 F.R.D. at 138.

Conclusion.

Wherefore, the Plaintiff's motion to compel is granted in part and denied in part, consistent with the foregoing terms of this Order.

**IT IS SO ORDERED.**

Date: 12/31/09

*Timothy S. Black*
Timothy S. Black
United States Magistrate Judge